IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

G.F.B. ENTERPRISES, LLC, d/b/a LEXUS
OF KENDALL and d/b/a LEXUS OF WEST
KENDALL,

    Plaintiffs,

v.

TOYOTA MOTOR SALES U.S.A., INC.,

    Defendant.

_____/

CASE NO. 22-22897 CA 01

81089
1-11,2023
1-45. PM

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiffs, G.F.B. ENTERPRISES LLC, d/b/a Lexus of Kendall d/b/a Lexus of West Kendall, LLC, sues Defendant, TOYOTA MOTOR SALES U.S.A., INC., and states:

### Parties

    1.    Plaintiff, G.F.B ENTERPRISES LLC, d/b/a Lexus of Kendall ("Kendall") and d/b/a Lexus of West Kendall ("West Kendall"), is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida. Kendall and West Kendall are "motor vehicle dealers" as defined in section 320.60(11)(a), Florida Statutes.

    2.    Defendant, TOYOTA MOTOR SALES U.S.A. INC., ("TMS"), is a California corporation authorized to do business in the State of Florida and transacting business in Miami-Dade County, Florida. TMS is a licensed "distributor" as defined in section 320.60(5), Florida Statutes, and a "licensee" as defined in section 320.60(8), Florida Statutes.

3.   Kendall and TMS are parties to a Dealer Agreement pursuant to which Kendall operates a dealership for the sale and service of Lexus brand motor vehicles at 10775 South Dixie Highway, Miami, Florida 33156. Kendall's Dealer Agreement is a "franchise agreement" as defined in section 320.60(1), Florida Statutes.

4.   West Kendall and TMS are parties to a Dealer Agreement pursuant to which West Kendall operates a dealership for the sale and service of Lexus brand motor vehicles at 13750 SW 136TH Street, Miami, Florida 33186. West Kendall's Dealer Agreement is a "franchise agreement" as defined in section 320.60(1), Florida Statutes.

### Jurisdiction and Venue

5.   Pursuant to section 26.012, Florida Statutes, this court has jurisdiction over the issues herein raised, and the amounts in controversy exceed the minimum jurisdictional limits of this Court.

6.   Pursuant to section 47.011, Florida Statutes, venue is proper in this Court.

### General Allegations

7.   Pursuant to their Dealer Agreements and section 320.696, Florida Statutes, Kendall and West Kendall perform certain obligations for vehicle preparation, delivery, warranties, and recalls on TMS's products (collectively the "warranty obligations").

8.   Kendall and West Kendall incur expenses in performing the warranty obligations, which fulfill TMS's commitments regarding repairs.

9.   Pursuant to section 320.696(3), Florida Statutes, TMS is obligated to compensate Kendall and West Kendall for parts used in performing warranty obligations.

10.  Section 320.696(3) requires that compensation for parts used by a dealer in performing warranty obligations may be an agreed percentage markup over a licensee's dealer

cost, but if an agreement is not reached within thirty (30) days after a dealer's written request, compensation for parts used in performing warranty obligations is the greater of: (1) the dealer's average percentage markup over dealer cost for all parts charged by the dealer for non-warranty repairs in 50 consecutive retail customer repairs made by the dealer within a three month period before the dealer's written request for a change in reimbursement (certain specified parts are excluded from this calculation) (the "Repair Order Markup Percentage"); (2) the licensee's highest suggested retail or list price for the parts ("MSRP"); or (3) an amount equal to the dealer's markup over dealer cost that results in the same gross profit percentage for parts used in performing warranty obligations as the dealer receives for parts used in non-warranty repairs as evidenced by the average of the dealer's gross profit percentage in the dealer's financial statements for the two months preceding the dealer's request (the "Financial Statement Markup Percentage").

11.     Kendall submitted a request to TMS to increase its reimbursement rates for parts used in fulfilling the warranty obligations ("warranty parts reimbursement rate") by email dated September 2, 2022. In response TMS instructed Kendall to begin it calculation with repair orders closed on July 26, 2022. Kendall submitted its calculation which was received by TMS on September 27, 2022 (the "Kendall Request").

12.     Likewise, West Kendall submitted a request to TMS to increase its warranty parts reimbursement rate by email dated September 2, 2022. In response TMS instructed Kendall to begin it calculation with repair orders closed on July 26, 2022. Kendall submitted its calculation which was received which was received by TMS on October 7, 2022 (the "West Kendall Request").

13. On October 26, 2022, TMS sent a letter denying the Kendall Request.[1]

14. On November 3, 2022, TMS sent a letter denying the West Kendall Request.[2]

15. As a result of the denials in October and November, respectively, an agreement as to Kendall's warranty parts reimbursement rate was not reached between Kendall and TMS within thirty (30) days of the Kendall Request; additionally, an agreement as to West Kendall's warranty parts reimbursement rate was not reached between West Kendall and TMS within thirty (30) days of the West Kendall Request.

16. Because an agreement was not reached within thirty (30) days, Kendall was and is entitled to receive a warranty parts reimbursement rate which is the greater of its Repair Order Markup Percentage, Financial Statement Markup Percentage, or MSRP for all of the parts used in performing the warranty obligations.

17. Likewise, West Kendall was and is entitled to receive a warranty parts reimbursement which is the greater of its Repair Order Markup Percentage, Financial Statement Markup Percentage, or MSRP for all of the parts used in performing the warranty obligations.

18. For both Kendall and West Kendall, the greater of the three permissible rates of compensation is the Repair Order Markup Percentage. Both Kendall and West Kendall demonstrated that fact to TMS in their requests.

19. TMS has refused to comply with section 320.696, Florida Statutes, and pay the highest of the three rates to Kendall and West Kendall. Instead, TMS has taken the position that it disagrees with Kendall and West Kendall's calculation the Repair Order Markup Percentage, and, on that basis, has chosen to utilize the Financial Statement Markup Percentage.

---

[1] *See* Denial Letter, attached as **Exhibit "A"**.
[2] *See* Denial Letter, attached as **Exhibit "B"**.

20. TMS' action in this regard is a clear violation of section 320.696, Florida Statutes.

21. Kendall and West Kendall have retained the undersigned counsel to bring this action and are seeking the recovery of their damages, reasonable attorney's fees, and all costs and charges assessable to TMS.

## COUNT I
### Violation of Section 320.696(3), Florida Statutes (Action for Damages by Kendall)

22. The allegations of paragraphs 1 through 21 are re-alleged as if fully TMS forth herein.

23. This is an action for damages pursuant to section 320.697, Florida Statutes, by Kendall for TMS' violation of section 320.696(3), Florida Statutes.

24. Section 320.696, Florida Statutes, requires that if a dealer and licensee are unable to agree on a warranty parts reimbursement rate within thirty (30) days of a dealer's request for an increase in such rate, the licensee is obligated to pay the dealer a warranty parts reimbursement rate which is equivalent to the higher of the dealer's Repair Order Markup Percentage, its Financial Statement Markup Percentage, or MSRP, for all of the parts by such dealer used in performing the warranty obligations.

25. Kendall submitted the Kendall Request which was received by TMS on September 27, 2022. The Kendall Request demonstrated that the Repair Order Markup Percentage is the highest of the permissible reimbursement rates.

26. Kendall and TMS did not agree on a warranty parts reimbursement rate within thirty (30) days of Kendall first notifying TMS of Kendall's request for a warranty parts reimbursement rate increase.

5

27. TMS has refused to reimburse Kendall at Kendall's Repair Order Markup Percentage for all of the parts used by Kendall in performing the warranty obligations.

28. Instead, TMS reimbursed Kendall using the Financial Statement Markup Percentage, which is not the highest of the three (3) permissible reimbursement methods pursuant to section 320.696(3), Florida Statutes.

29. TMS' actions violate section 320.696(3), Florida Statutes, and Kendall has been damaged thereby.

WHEREFORE, pursuant to section 320.697, Kendall demands entry of a judgment against TMS for damages, treble damages, attorney's fees, interest costs, and such other relief this Court deems just and equitable.

## COUNT II
### Violation of Section 320.696(3), Florida Statutes (Action for Injunctive Relief by Kendall)

30. The allegations of paragraphs 1 through 21 are re-alleged as if fully TMS forth herein.

31. This is an action for injunctive relief pursuant to section 320.695, Florida Statutes, by Kendall for TMS' violation of section 320.696(3), Florida Statutes.

32. Pursuant to section 320.695, this action is brought by Kendall in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida, for the use and benefit of Kendall.

33. Section 320.696, Florida Statutes, requires that if a dealer and licensee are unable to agree on a warranty parts reimbursement rate within thirty (30) days of a dealer's request for an increase in such rate, the licensee is obligated to pay the dealer a warranty parts reimbursement rate which is equivalent to the higher of the dealer's Repair Order Markup Percentage, its Financial

6

Statement Markup Percentage, or MSRP for all of the parts by such dealer used in performing the warranty obligations.

34. Kendall submitted the Kendall Request which was received by TMS on September 27, 2022. The Kendall Request demonstrated that the Repair Order Markup Percentage is the highest of the permissible reimbursement rates.

35. Kendall and TMS did not agree on a warranty parts reimbursement rate within thirty (30) days of Kendall first notifying TMS of Kendall's request for a warranty parts reimbursement rate increase..

36. TMS has refused to reimburse Kendall at Kendall's Repair Order Markup Percentage for all the parts used by Kendall in performing the warranty obligations.

37. Instead, TMS reimbursed Kendall using the Financial Statement Markup Percentage, which is not the highest of the three (3) reimbursement rates pursuant to Section 320.696(3).

38. TMS' actions violate section 320.696(3), Florida Statutes.

39. Section 320.695, Florida Statutes, provides that "any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . .. "A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

40. Accordingly, an injunction requiring TMS to pay Kendall the correct warranty parts reimbursement rate required by section 320.696(3), Florida Statutes is appropriate.

WHEREFORE, Kendall, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida, for the use and benefit of Kendall, hereby demands entry

of an injunction requiring TMS to pay Kendall a warranty parts reimbursement rate equivalent to the higher of Kendall's Repair Order Markup Percentage, its Financial Statement Markup Percentage, or MSRP as required by section 320.696(3), awarding Kendall reasonable attorney's fees and costs, and for such other relief this Court deems just and equitable.

## COUNT III
### Violation of Section 320.696(3), Florida Statutes (Action for Damages by West Kendall)

41. The allegations of paragraphs 1 through 21 are re-alleged as if fully TMS forth herein.

42. This is an action for damages pursuant to section 320.697, Florida Statutes, by West Kendall for TMS' violation of section 320.696(3), Florida Statutes.

43. Section 320.696, Florida Statutes, requires that if a dealer and licensee are unable to agree on a warranty parts reimbursement rate within thirty (30) days of a dealer's request for an increase in such rate, the licensee is obligated to pay the dealer a warranty parts reimbursement rate which is equivalent to the higher of the dealer's Repair Order Markup Percentage, its Financial Statement Markup Percentage or MSRP for all of the parts by such dealer used in performing the warranty obligations.

44. West Kendall submitted the West Kendall Request which was received by TMS on October 7, 2022. The West Kendall Request demonstrated that the Repair Order Markup Percentage is the highest of the permissible reimbursement rates.

45. West Kendall and TMS did not agree on a warranty parts reimbursement rate within thirty (30) days of West Kendall first notifying TMS of West Kendall's request for a warranty parts reimbursement rate increase.

46. TMS has refused to reimburse West Kendall at West Kendall's Repair Order Markup Percentage for all of the parts used by West Kendall in performing the warranty obligations.

47. Instead, TMS reimbursed West Kendall using the Financial Statement Markup Percentage, which is not the highest of the three (3) reimbursement methods pursuant to section 320.696(3), Florida Statutes.

48. TMS' actions violate section 320.696(3), Florida Statutes, and West Kendall has been damaged thereby.

WHEREFORE, pursuant to section 320.697, West Kendall demands entry of a judgment against TMS for damages, treble damages, attorney's fees, interest costs, and such other relief this Court deems just and equitable.

## COUNT IV
### Violation of Section 320.696(3), Florida Statutes (Action for Injunctive Relief by West Kendall)

49. The allegations of paragraphs 1 through 21 are re-alleged as if fully TMS forth herein.

50. This is an action for injunctive relief pursuant to section 320.695, Florida Statutes, by West Kendall for TMS' violation of section 320.696(3), Florida Statutes.

51. Pursuant to section 320.695, this action is brought by West Kendall in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida, for the use and benefit of West Kendall.

52. Section 320.696, Florida Statutes, requires that if a dealer and licensee are unable to agree on a warranty parts reimbursement rate within thirty (30) days of a dealer's request for an increase in such rate, the licensee is obligated to pay the dealer a warranty parts reimbursement

9

rate which is equivalent to the higher of the dealer's Repair Order Markup Percentage, its Financial Statement Markup Percentage or MSRP for all of the parts by such dealer used in performing the warranty obligations.

53. West Kendall submitted the West Kendall Request which was received by TMS on October 7, 2022. The West Kendall Request demonstrated that the Repair Order Markup Percentage is the highest of the permissible reimbursement rates.

54. West Kendall and TMS did not agree on a warranty parts reimbursement rate within thirty (30) days of West Kendall first notifying TMS of West Kendall's request for a warranty parts reimbursement rate increase.

55. TMS has refused to reimburse West Kendall at West Kendall's Repair Order Markup Percentage for all of the parts used by West Kendall in performing the warranty obligations.

56. Instead, TMS reimbursed West Kendall using the Financial Statement Markup Percentage method, which is not the highest of the three (3) reimbursement methods pursuant to section 320.696(3), Florida Statutes.

57. TMS' actions violate section 320.696(3), Florida Statutes.

58. Section 320.695, Florida Statutes, provides that "any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . .. "A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

59. Accordingly, an injunction requiring TMS to pay West Kendall the warranty parts reimbursement rate required by section 320.696(3), Florida Statutes is appropriate.

WHEREFORE, West Kendall, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of West Kendall, hereby demands entry of an injunction requiring TMS to pay West Kendall a warranty parts reimbursement rate equivalent to the higher of West Kendall's Repair Order Markup Percentage, its Financial Statement Markup Percentage, or MSRP as required by section 320.696(3), awarding West Kendall reasonable attorney's fees and costs, and for such other relief this Court deems just and equitable.

### Jury Trial Demand

Plaintiff hereby demands trial by jury of all matters so triable.

Respectfully submitted this 2nd day of December, 2022.

/s/ John W. Forehand
John W. Forehand (Fla. Bar No. 979813)
jforehand@kfb-law.com
R. Craig Spickard (Fla. Bar No. 721751)
cspickard@kfb-law.com
Michael J. Sanchez (Fla. Bar No. 1018168)
msanchez@kfb-law.com
Kurkin Forehand Brandes LLP
1089 West Morse Boulevard, Suite D
Winter Park, FL 32789
Telephone: (407) 602-0249

and

William Diaz-Rousselot (Fla. Bar No. 300070)
wdiazr@kfb-law.com
Kurkin Forehand Brandes LLP
18851 NE 29th Avenue, Suite 303
Aventura, FL 33180
Telephone: (305) 929-8500

•• PROTECTED 関係者外秘                                                                                        EXHIBIT A
EXHIBIT 1



October 26, 2022

**VIA FEDERAL EXPRESS/OVERNIGHT DELIVERY AND ELECTRONIC MAIL**
lbean@kendalltoyota.com

Lorraine Bean, Dealer Principal
G.F.B. Enterprises, LLC
d/b/a Lexus of Kendall
Dealer No. 60915
10943 South Dixie Highway
Miami, FL 33156

Re:   Request for Warranty Parts Reimbursement by Lexus of Kendall

Dear Ms. Bean:

Thank you for your recent request for Lexus, a Division of Toyota Motor Sales U.S.A., Inc. ("Lexus") to consider an adjustment to the warranty parts reimbursement rate of Lexus of Kendall ("Dealer"). Your letter and accompanying documents were received by Lexus on September 27, 2022 ("Submission").

We have carefully reviewed the information you have submitted, and regret that Lexus is unable to accommodate your request. Lexus currently reimburses Dealer at MSRP for warranty parts, which is one of the highest reimbursement rates implemented on a voluntary basis by any manufacturer or distributor. Lexus has been paying MSRP to its dealers since October, 2007.

Lexus's decision is based on the fact that your Submission does not satisfy Florida law Section 320.696(3)(a)(1). Specifically, the Repair Orders submitted, and the computations based on those Repair Orders, did not satisfy the Florida statute. Examples of these deficiencies are summarized below, and are examples only, and not meant to include each deficiency in the Submission. Lexus is providing this information so that you will be fully informed, although we have no obligation to do so.

1.   **Inclusion of non-warranty-like repairs.** Many of the Repair Orders included in the Submission contain routine maintenance and other non-warranty-like repairs, and those repairs should not have been included in the calculation of the requested parts rate. For example, Repair Orders 165628L, 165907L, and 166258L include bulb replacements; Repair Order 165351L includes a belt replacement; and Repair Orders 165402L, 165526L, 165627L, 165630L, 165648L, 165649L, 165696L, 165701L, 165710L, 165814L, 165819L, 165858L, 165879L, 165882L, 165917L, 165947L, 166089L, 166211L, 166258L, 166273L, 166284L, 166288L, and 166313L include brake repairs. The replacement/maintenance of these items on the vehicle with the indicated mileage constitutes a maintenance operation and not a warranty-like repair. Repair Orders 165412L, 165420L, and 166284L include

4876-9333-7392 v.1 030168/01507, 12:57 PM 08/30/2022
4864-2239-3403 v.1 000409/09010, 1:59 PM. 10/25/2022         1425 Great Oaks Way, Alpharetta, GA 30022  |  Lexus.com

Lexus of Kendall
October 26, 2022
Page 2

transmission fluid exchanges, which do not come within the provisions of Lexus's warranty and therefore are not warranty-like repairs. Repair Order 166261L indicates that a part was ordered but no repair was performed, and therefore no warranty-like repair was "performed" by Dealer. The vehicle in Repair Order 165917L is still under warranty, and if the repairs performed on this vehicle were warranty-like repairs, they would have been covered under warranty. These are examples only, and there may be others in the Submission that should not be included in Dealer's Submission and parts rate calculation.

2. **Inclusion of non-retail customer-paid repairs.** Repair Order 165791L included repairs on a vehicle owned by Lexus of Kendall. Florida law provides that the calculation of the reimbursement rate is based on parts used in "50 consecutive retail customer repairs." Since a retail customer did not pay for the repairs, they should be excluded from Dealer's Submission and parts rate calculation. Additionally, the vehicle was still under warranty, and if the repairs performed on this vehicle were warranty-like repairs, they would have been covered under warranty. This is an example only, and there may be others in the Submission that should not be included in Dealer's Submission and parts rate calculation.

3. **Discounts improperly applied.** Some of the Repair Orders in the Submission do not correctly reflect a discount afforded to the customer. As an example, Repair Order 166339L reflects a total discount of $75.00 afforded the customer that was not properly allocated between the labor and parts. In order to correctly allocate and apply this discount, Dealer should total all labor and parts in the Repair Order and then divide $75.00 by that total. This yields a discount percentage of 0.04 to be applied to the repairs included in the Repair Order. When the percentage of 0.04 is applied to the sale price of $795.52, the sale price for this part to be included in the Submission is $764.89, not $795.52 in Dealer's Submission. This is an example only, and there may be others in the Submission and parts rate calculation.

4. **Failure to include 50 qualifying repair orders.** Florida law requires the submission to include 50 consecutive retail customer repairs. As discussed above, certain Repair Orders should not have been included in Dealer's Submission and rate calculation. When these Repair Orders are removed, Dealer's Submission no longer contains the required number of 50 qualifying repair orders. In addition, certain repairs and parts discussed above should not have been included in Dealer's Submission and rate calculation, resulting in an incorrect calculation of Dealer's rate under Florida law.

Lexus has provided this information so that you will be fully informed. Fla. Stat. § 320.696(3)(a) states that "the compensation may be an agreed percentage markup over the licensee's dealer cost, but if an agreement is not reached within 30 days after a dealer's written request, compensation for the parts is the greater of:"

(1) **The Repair Order Method** ("the dealer's arithmetical mean percentage markup over dealer cost for all parts charged by the dealer in 50 consecutive retail customer repairs made by the dealer within a 3-month period before the dealer's written request for a change in reimbursement, or all of the retail customer repair orders

Lexus of Kendall
October 26, 2022
Page 3

> ("ROs") over that 3-month period if there are fewer than 50 retail customer ROs in that period . . .");
> (2) **MSRP** ("the franchisor's highest suggested retail or list price for the parts"); or
> (3) **The Financial Statement Method** ("An amount equal to the dealer's markup over dealer cost that results in the same gross profit percentage for parts used in work done under subsection (1) as the dealer receives for parts used in the customer retail repairs, as evidenced by the average of said dealer's gross profit percentage in the dealer's financial statements for the 2 months preceding the dealer's request . . .").

In light of the numerous deficiencies with the Submission and the number of non-qualifying repair orders that were included, Lexus cannot reasonably provide a rate calculated under Fla. Stat. § 320.696(3)(a)(1) (The Repair Order Method). Accordingly, Lexus has reviewed the financial statements for Dealer from July and August 2022, the two months preceding Dealer's Submission, and has calculated an average customer-paid markup percentage for Lexus parts of 90.74%, which Lexus calculates to be higher than MSRP. Therefore, Lexus will implement a warranty parts reimbursement rate of 90.74%, which is the highest of the methods found under Fla. Stat. § 320.696(3)(a). This approved warranty parts reimbursement rate will be effective October 27, 2022, which is 30 days after Lexus's receipt of the Submission.

Lexus reserves all rights and objections related to this matter, including, but not limited to, any and all objections to your contention that Dealer is entitled to warranty reimbursement at retail rates.

Sincerely,

Samuel Wintermyer
General Manager, Lexus Southern Area
Lexus, a Division of Toyota Motor Sales U.S.A., Inc.

cc:   David Sowatsky, Warranty Administration Manager

EXHIBIT 1
EXHIBIT B



November 3, 2022

**VIA FEDERAL EXPRESS/OVERNIGHT DELIVERY AND ELECTRONIC MAIL**
lbean@kendalltoyota.com

Lorraine Bean, Dealer Principal
G.F.B. Enterprises, LLC
d/b/a Lexus of West Kendall
Dealer No. 60932
13750 SW 136th Street
Miami, FL 33186

Re:   Request for Warranty Parts Reimbursement by Lexus of West Kendall

Dear Ms. Bean:

Thank you for your recent request for Lexus, a Division of Toyota Motor Sales U.S.A., Inc. ("Lexus") to consider an adjustment to the warranty parts reimbursement rate of Lexus of West Kendall ("Dealer"). Your letter and accompanying documents were received by Lexus on October 7, 2022 ("Submission").

We have carefully reviewed the information you have submitted, and regret that Lexus is unable to accommodate your request. Lexus currently reimburses Dealer at MSRP for warranty parts. Lexus has been paying MSRP to its dealers since October, 2007.

Lexus's decision is based on the fact that your Submission does not satisfy Florida law Section 320.696(3)(a)(1). Specifically, the Repair Orders submitted, and the computations based on those Repair Orders, did not satisfy the Florida statute. Examples of these deficiencies are summarized below, and are examples only, and not meant to include each deficiency in the Submission. Lexus is providing this information so that you will be fully informed, although we have no obligation to do so.

1.   **Inclusion of non-warranty-like repairs.** Many of the Repair Orders included in the Submission contain routine maintenance and other non-warranty-like repairs, and those repairs should not have been included in the calculation of the requested parts rate. For example, Repair Order 264686N includes a key/transmitter replacement; and Repair Orders 263570N, 263597N, 263732N, 263794N, 263910N, 263933N, 263970N, 264049N, 264090N, 264099N, 264315N, 264422N, 264581N, 264654N, 264666N, 264668N, 264734N, 264791N, and 264867N include brake repairs. The replacement/maintenance of these items on the vehicle with the indicated mileage constitutes a maintenance operation and not a warranty-like repair. The vehicles in Repair Orders 263732N, 264581N, 264654N, 264666N, 264686N, 264791N, and 264867N are still under warranty, and if the repairs performed on these vehicles were warranty-like repairs, they would have been covered

Lexus of West Kendall
November 3, 2022
Page 2

under warranty. These are examples only, and there may be others in the Submission that should not be included in Dealer's Submission and parts rate calculation.

2.  **Failure to include 50 qualifying repair orders.** Florida law requires the submission to include 50 consecutive retail customer repairs. As discussed above, certain Repair Orders should not have been included in Dealer's Submission and rate calculation. When these Repair Orders are removed, Dealer's Submission no longer contains the required number of 50 qualifying repair orders. In addition, certain repairs and parts discussed above should not have been included in Dealer's Submission and rate calculation, resulting in an incorrect calculation of Dealer's rate under Florida law.

Lexus has provided this information so that you will be fully informed. Fla. Stat. § 320.696(3)(a) states that "the compensation may be an agreed percentage markup over the licensee's dealer cost, but if an agreement is not reached within 30 days after a dealer's written request, compensation for the parts is the greater of:"

- (1) **The Repair Order Method** ("the dealer's arithmetical mean percentage markup over dealer cost for all parts charged by the dealer in 50 consecutive retail customer repairs made by the dealer within a 3-month period before the dealer's written request for a change in reimbursement, or all of the retail customer repair orders ("ROs") over that 3-month period if there are fewer than 50 retail customer ROs in that period...");
- (2) **MSRP** ("the franchisor's highest suggested retail or list price for the parts"); or
- (3) **The Financial Statement Method** ("An amount equal to the dealer's markup over dealer cost that results in the same gross profit percentage for parts used in work done under subsection (1) as the dealer receives for parts used in the customer retail repairs, as evidenced by the average of said dealer's gross profit percentage in the dealer's financial statements for the 2 months preceding the dealer's request...").

In light of the numerous deficiencies with the Submission and the number of non-qualifying repair orders that were included, Lexus cannot reasonably provide a rate calculated under Fla. Stat. § 320.696(3)(a)(1) (The Repair Order Method). Accordingly, Lexus has reviewed the financial statements for Dealer from July and August 2022, the two months preceding Dealer's Submission, and has calculated an average customer-paid markup percentage for Lexus parts of 94.51%, which Lexus calculates to be higher than MSRP. Therefore, Lexus will implement a warranty parts reimbursement rate of 94.51%, which is the highest of the methods found under Fla. Stat. § 320.696(3)(a). This approved warranty parts reimbursement rate will be effective November 6, 2022, which is 30 days after Lexus's receipt of the Submission.

Lexus reserves all rights and objections related to this matter, including, but not limited to, any and all objections to your contention that Dealer is entitled to warranty reimbursement at retail rates.

Lexus of West Kendall
November 3, 2022
Page 3

Sincerely,

Samuel Wintermyer
General Manager, Lexus Southern Area
Lexus, a Division of Toyota Motor Sales U.S.A., Inc.

cc:   David Sowatsky, Warranty Administration Manager