UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-20392-RAR

**G.F.B. ENTERPRISES, LLC**, *d/b/a Lexus of Kendall and d/b/a Lexus of West Kendall*,

    Plaintiff,

v.

**TOYOTA MOTOR SALES U.S.A, INC.**,

    Defendant.
_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant Toyota Motor Sales U.S.A., Inc.'s Motion to Dismiss Plaintiff's Complaint ("Motion"), [ECF No. 9], filed on February 7, 2023.[1] Having considered Defendant's Motion, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 9], is **DENIED** for the reasons stated herein.

## BACKGROUND

The following factual allegations are derived from Plaintiff G.F.B. Enterprises LLC's ("GFB") Complaint, [ECF No. 4-1]. GFB operates two motor vehicle dealers, Lexus of Kendall ("Kendall") and Lexus of West Kendall ("West Kendall"). Compl. ¶ 1. Kendall and West Kendall each "perform certain obligations for vehicle preparation, delivery, warranties, and recalls on" Toyota Motor Sales U.S.A., Inc.'s ("TMS") motor vehicles. Compl. ¶¶ 3–4, 7. Under section

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Pl.'s Resp. in Opp'n ("Response"), [ECF No. 11]; Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s Compl., [ECF No. 13]. Because Defendant filed its Memorandum of Law ("Memorandum") separately from the Motion, *see* [ECF Nos. 9–10], the Court cites the Memorandum where relevant.

320.696 of the Florida Statutes, TMS must compensate GFB for the cost of certain parts GFB uses in performing services related to TMS vehicles. Compl. ¶¶ 7–9; *see also* Fla. Stat. § 320.696. Kendall and West Kendall requested an increase in the compensation rate for these parts, but TMS rejected the requested rates. *See* Compl. ¶¶ 11–14. Because the parties did not reach an agreement on compensation, section 320.696 required TMS to compensate GFB based on the highest of three rates listed in the statute. Compl. ¶¶ 16–18. These three rates, further detailed below, are (1) the "Repair Order Markup Percentage"; (2) the "MSRP"; and (3) the "Financial Statement Markup Percentage." Compl. ¶ 10. GFB alleges Kendall and West Kendall "demonstrated" to TMS that the highest rate was the Repair Order Markup Percentage. Compl. ¶ 18. TMS, however, "disagree[d] with Kendall and West Kendall's calculation [of] the Repair Order Markup Percentage" and maintained that the parties should calculate GFB's compensation using the Financial Statement Markup Percentage. Compl. ¶ 19. GFB filed suit, and TMS now moves to dismiss the Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017).

## ANALYSIS

Under section 320.696 of the Florida Statutes, a licensee must compensate a motor vehicle dealer for parts used when performing certain work related to the licensee's products. Fla. Stat. §

320.696(3)(a).  This compensation "may be an agreed percentage markup over the licensee's dealer cost."  *Id.*  A dealer may request a compensation increase in writing, and if the licensee and dealer do not reach an agreement within thirty days of the dealer's written request, compensation is set at the greater of the Repair Order Markup Percentage, the MSRP, and the Financial Statement Markup Percentage.  *Id.*  The Repair Order Markup Percentage is determined by calculating

> [t]he dealer's arithmetical mean percentage markup over dealer cost for all parts charged by the dealer in 50 consecutive retail customer repairs made by the dealer within a 3-month period before the dealer's written request for a change in reimbursement pursuant to this section, or all of the retail customer repair orders over that 3-month period if there are fewer than 50 retail customer repair orders in that period.

*Id.* § 320.696(3)(a)1.  The statute provides that certain parts, however, are excluded when calculating the Repair Order Markup Percentage.  *Id.* § 320.696(3)(b).  The MSRP is "[t]he licensee's highest suggested retail or list price for the parts."  *Id.* § 320.696(3)(a)2.  Finally, the Financial Statement Markup Percentage is derived by calculating "the average of [a] dealer's gross profit percentage in the dealer's financial statements for the 2 months preceding the dealer's request."  *Id.* § 320.696(3)(a)3.  TMS argues GFB cannot state a claim for relief because "Kendall and West Kendall did not compute their submitted markup calculations in compliance with" the statute because GFB relied on repair orders containing parts that should have been excluded from the calculation.  *See* Mem. at 9–10.  TMS also argues it could not compute an accurate Repair Order Markup Percentage because of this purported defect in GFB's submissions.  *Id.*

      TMS's argument is merely an attack on the sufficiency of the repair orders GFB submitted.  A court cannot resolve a factual dispute in adjudicating a Rule 12(b)(6) motion to dismiss.  *See Vinson v. Fla. Dep't of Corrs.*, No. 19-333, 2020 WL 12309502, at *2 (N.D. Fla. May 15, 2020) ("[T]he court cannot resolve factual disputes on a 12(b)(6) motion.").  While the legal sufficiency

of each repair order might be a legal conclusion, the subject repair orders are not before the Court, and TMS cites no authority that would allow this Court to dismiss the Complaint on the basis of TMS's otherwise unsupported representation that GFB did not submit compliant repair orders. The content of these repair orders is certainly a question of fact, and it would be premature to delve into this dispute prior to summary judgment or trial. *See id.*; *cf. Kaplan v. Lappin*, No. 10-80227, 2010 WL 2889219, at *2 (S.D. Fla. July 20, 2010) (denying motion to dismiss because "whether Defendant . . . had fifteen or more employees is generally a disputed issue of fact for jury consideration"). TMS's argument, which is simply an early attack on the merits of the claim, is therefore unavailing and the motion must be denied.[2]

## CONCLUSION

For the foregoing reasons, Defendant's Motion, [ECF No. 9], is **DENIED**. Defendant shall file an answer to Plaintiff's Complaint, [ECF No. 4-1], within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 24th day of March, 2023.

---
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[2] The parties dispute what obligations, if any, section 320.696 imposes on a licensee when a dealer requests a compensation increase but submits less than fifty compliant repair orders or otherwise miscalculates the appropriate rate. Resp. at 8–9; Reply at 4–5. This dispute is not relevant to the Court's adjudication of the Motion because, even assuming TMS's interpretation is correct, TMS does not identify a pleading deficiency related to this dispute. Therefore, the Court does not address the parties' disagreement.